**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ORLANDO WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO, *Commissioner of the Social Security Administration*,<br><br>Defendant. | ) | No. 4:25-cv-00671-MTS |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of the final decision of Defendant, the Commissioner of the Social Security Administration, denying the application of Orlando Williams ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").* In December 2022, Plaintiff applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and SSI under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385 (the "Act"). (Tr. 191-99, 202-07). Plaintiff alleges disability due to osteoarthritis in his left shoulder, hypertension, migraine headaches, and COVID-19, with an alleged onset date of May 02, 2022. (Tr. 237-41). In May 2024, following a hearing, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled as defined by the Act. (Tr. 21). For the reasons that follow, the Court will affirm that decision.

## I. Standard of Review and Legal Framework

To qualify for disability benefits, Plaintiff must prove that he is disabled under the Social Security Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The

* Sections 405(g) and 1383(c)(3) of Title 42 provide for judicial review of the SSA Commissioner's "final decision." After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 21), the Appeals Council denied Plaintiff's request for review, (Tr. 1); thus, the ALJ's decision stands as the Commissioner's final decision.

Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d); 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration has a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove that: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds that a claimant can return to past relevant work, the claimant is not disabled. *Id.* If, however, the ALJ finds that a claimant cannot return to past relevant work, the analysis moves to Step 5, and the burden shifts to the Administration to

establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* at § 404.1520(g).

The Court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported a different decision, or the reviewing court might have reached a different conclusion had it been the finder of fact, a district court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, a court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that judicial review of an ALJ's disability determination is narrow, and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)). Nevertheless, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and more than just a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found that Plaintiff did not perform substantial gainful activity ("SGA") during the alleged period of disability. (Tr. 16). At Step 2, the ALJ found that Plaintiff had severe impairments of degenerative joint disease of the shoulder and hips, hypertension, and asthma post-Covid. (Tr. 16). At Step 3, the ALJ found that Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment. (Tr. 16-17). Thus, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567, with postural, environment, and physical limitations. (Tr. 17-19). The ALJ determined that Plaintiff can lift or carry 10 pounds frequently and 20 pounds occasionally, with avoidance of overhead reaching, no climbing, an option to sit or stand at 30 minute intervals, a minute or two break to change position, occasional stopping, kneeling, crouching, and crawling, and avoidance of concentrated vibrations, hot and cold temperature extremes, more than moderate noise, concentrated dust, gas, fumes and other pulmonary irritants, and concentrated humidity. At Step 4, the ALJ found that Plaintiff could not return to his past relevant work as a forklift operator, warehouse worker, or cook helper. (Tr. 19). Finally, at Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there were jobs in the national economy that Plaintiff can perform despite his nonexertional limitations, such as a collator operator, routing clerk, and sorter. (Tr. 20-21). Consequently, the ALJ concluded Plaintiff is not disabled under the Act. (Tr. 21).

## III. Discussion

Plaintiff challenges the ALJ's conclusion in Step 2 that the medical opinion of Certified Nurse Practitioner Sabrina Elien was unpersuasive with respect to the severity of Plaintiff's

physical impairments. According to Plaintiff, the ALJ failed to properly consider the "total limiting effects" of Plaintiff's impairments when evaluating NP Elien's opinion because: (1) the ALJ failed to adequately discuss the supportability and consistency factors when finding NP Elien's opinion unpersuasive; and (2) the ALJ's RFC determination was not supported by substantial evidence, as he improperly concluded that Plaintiff's physical examinations "did not show severe musculoskeletal or neurological deficits . . . warranting a sedentary RFC" despite significant evidence supporting a contrary opinion and failed to consider the effect of Plaintiff's headaches. Doc. [13] at 8-12. The Court disagrees and concludes that the ALJ's findings are supported by substantial evidence on the record as a whole.

*

For claims filed on or after March 27, 2017, an ALJ must evaluate medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c. These rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ must evaluate the persuasiveness of all medical opinions and prior administrative medical findings in a claimant's case record by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(a), (c). The most important factors for an ALJ to consider are supportability and

consistency, and the ALJ must "explain how he considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[s] or prior administrative medical finding[s], the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In articulating how he considered the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, 2:20-cv-0035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (collecting cases). Consistency, on the other hand, relates to the medical opinion's congruity with the evidence from other sources in the record. *See* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion . . . is with the evidence form other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be."). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, 1:21-cv-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022) (citing *Goss v. Kijakazi*, 4:21-cv-0663-LPR-JJV, 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

Here, Plaintiff takes issue with the ALJ's evaluation of the severity of his medical conditions and the ALJ's subsequent finding that NP Elien's medical opinion was unpersuasive. In his decision, the ALJ, having "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)," concluded that

"[w]hile the medical record, evidence and testimony demonstrates a basis for the claimant's symptoms, . . . the claimant's allegations regarding the severity and limiting effects of the disorders are not fully supported." (Tr. 17-18). Discussing Plaintiff's conditions, the ALJ stated that "[t]he medical record shows the claimant was diagnosed with degenerative joint disease shoulder and hips, hypertension and asthma post-Covid" and noted that Plaintiff "endorsed headaches, joint, and hip stiffness, limited range of motion, and back pain." (Tr. 18).

However, the ALJ also noted that Plaintiff "was treated conservatively, with routine medication and follow up visits throughout the period at issue." (Tr. 18, 413, 438, 455, 471-76). The ALJ continued:

> Neurological and musculoskeletal exam findings were minimal throughout 2022. (1F/10, 35, 55; 2F/2-7). Specifically, aside from cervical and lumbar tenderness and restricted range of motion, he had normal alignment and no swelling or deforming of the back and extremities. (1F/10, 35, 55; 2F/2-7; 5F/21; 6F/8). Examiners did not note muscle spasms, positive straight leg raise, or abnormal gait. (1F/10, 35, 55; 2F/2-7; 5F/21; 6F/8). Similarly, throughout 2023, on neurological exams, aside from mildly decreased strength, examiners did not document decreased sensation, focal deficits, impaired cranial nerves or reflexes. (5F/21; 6F/8). The claimant generally appeared well-developed, well-nourished and in no acute distress. The record fails to show frequent emergency room visits or extended inpatient hospitalization. Given the medical record and claimant's testimony, the claimant's impairments can be reasonably accommodated with a residual functional capacity of less than a full range of light work, with nonexertional restrictions.

(Tr. 18). The ALJ considered additional factors that he determined were inconsistent with Plaintiff's subjective complaints and a sedentary RFC, including minimal findings on physical and mental examinations in 2022 and 2023, his conservative treatment, and his admitted activities of daily living, including "managing medication and attending medical appointments." (Tr. 18). Furthermore, Plaintiff regularly declined more advanced treatment recommendations, stating on one occasion that "he ha[d] been dealing with [his shoulder issues] for over 30 years and would like to just take a wait and see approach," (Tr. 523). *See Guilliams v. Barnhart*, 393 F.3d 798, 802

(8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.") (citing *Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001))). The record further reflects inconsistencies between Plaintiff's reports to his physicians and his testimony before the ALJ. For example, while Plaintiff testified during his hearing that he had only been consistently taking his blood pressure medication since November 2023, whereas before he would take his mother's blood pressure medication only when he was working, he nevertheless reported in April of the same year that he was in compliance with his blood pressure medication. (Tr. 40-41; 471).

After discussing Plaintiff's reported symptoms and the objective medical evidence, the ALJ turned to the opinions of the medical examiners, including NP Elien. (Tr. 19). While the ALJ initially noted that NP Elien's opinion was "supported with and explained by references to the claimant's findings on the medical consultive examination[s] . . . ," the ALJ nevertheless concluded that "the opinion [was] not consistent with the record, which shows less severe limitations" than a sedentary RFC would imply. (Tr. 19). In support of this finding, the ALJ stated that "records showed minimal limitation on range of motion on physical exams" and that "the remainder of the physical exams [did] not show sever musculoskeletal or neurological deficits, such as sever spinal tenderness, warranting a sedentary RFC." (Tr. 19, 511, 523).

While Plaintiff's argument, on its face, challenges the ALJ's analysis of the supportability and consistency factors, at bottom, he contends that the underlying evidence in the record does not support the ALJ's RFC determination. *See* Doc. [13] at 9 (range of motion); *id.* at 9-10 (musculoskeletal or neurological deficits); *id.* at 11 (headaches). However, Plaintiff's arguments merely establish that "substantial evidence would have supported an opposite decision," and even if true, the Court cannot reverse the ALJ's decision on that basis. *See Woolf v. Shalala*, 3 F.3d

1210, 1213 (8th Cir. 1993). As ever, the Court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the Court] may have reached a different outcome." *McNamara*, 590 F.3d at 610.

Additionally, when discussing the supportability factor, Plaintiff argues that "[d]espite finding the opinion to be supported by the examination findings, the ALJ failed to explain why he declined to adopt any aspect of NP Elien's opinion." Doc. [13] at 8. Plaintiff misstates the ALJ's explanatory responsibilities. While courts regularly find that remand is required where an ALJ finds a medical opinion persuasive, yet declines to include some of the RFC limitations found in that opinion, *see Bedore v. Kijakazi*, 4:22-cv-0567-SPM, 2023 WL 6064854, at *3 (E.D. Mo. Sept. 18, 2023) (collecting cases), the ALJ here expressly determined that NP Elien's opinion was not persuasive, as her conclusions were inconsistent with the medical record as a whole, (Tr. 19). As such, the ALJ was not required to discuss why he declined to adopt NP Elien's proposed limitations.

After considering the evidence in the record as a whole, the Court finds that the ALJ's assessment was within the "available zone of choice" and must therefore be affirmed. *See Austin v. Kujakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (explaining that the court will not disturb the ALJ's decision when it falls within the "available zone of choice" and finding that substantial evidence supported the ALJ's determination where the ALJ considered claimant's treatment notes, course of treatment, and daily activities); *Hardy v. Dudek*, 4:24-cv-0171-MTS, 2025 WL 917222, at *6 (E.D. Mo. Mar. 26, 2025) ("Even if the ALJ erred in addressing opinion evidence, remand is not required if substantial evidence nonetheless supports the ALJ's decision." (citing *Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293 (2d Cir. 2022) (unpublished summary order))).

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 17th day of August 2026

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE